# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, CAMPANELLA, and WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Captain UVO T. OGHREIKANONE**
**United States Army, Appellant**

ARMY 20150447

Headquarters, 8th Theater Sustainment Command
Gregory A. Gross, Military Judge
Colonel Anthony T. Febbo, Staff Judge Advocate (pretrial & recommendation)
Lieutenant Colonel Lajohnne A.W. Morris, Acting Staff Judge Advocate (addendum)

For Appellant: Captain Katherine L. Depaul, JA; M. Brian Magee, Esquire (on brief).

For Appellee: Lieutenant Colonel Eric K. Stafford, JA; Major Cormac M. Smith, JA (on brief).

28 February 2018

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

MULLIGAN, Senior Judge:

An officer panel sitting as a general court-martial convicted appellant, contrary to his pleas, of six specifications of sexual assault, one specification of abusive sexual contact, two specifications of assault consummated by battery, and one specification of adultery, in violation of Articles 120, 128, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920, 928, and 934 (2012 & Supp. I). The panel acquitted appellant of one specification of rape in violation of Article 120, UCMJ. The panel sentenced appellant to a dismissal, confinement for twenty years, and forfeiture of all pay and allowances. The convening authority approved the findings and sentence as adjudged, but, at appellant's request, waived forfeitures for six months for the benefit of appellant's two minor children.

Appellant's case is before this court for review under Article 66, UCMJ. Appellant raises three errors, none of which merit relief.[1]  First, appellant alleges his trial defense counsel were ineffective.  Second, appellant claims an unreasonable multiplication of charges.  Third, appellant contends the evidence was factually and legally insufficient to prove beyond a reasonable doubt that appellant was guilty of sexual assault, abusive sexual contact, and assault consummated by a battery.

**BACKGROUND**

In March 2014, depressed that he and his wife were in the process of obtaining a divorce, appellant persuaded Ms. KM, a female friend, to visit him in Hawaii, where appellant was stationed.  During the visit, appellant exploited their platonic friendship by assaulting Ms. KM on numerous occasions in his apartment, where Ms. KM had been staying.

The first attack occurred on 3 April 2014.  As Ms. KM was getting ready to go to sleep, appellant grabbed her against her will, flipped her face-down on a bed, put his knee into her back, and then inserted his fingers, and then his penis, into Ms. KM's vagina.  Ms. KM managed to eventually run into a bathroom and shut the door. Appellant convinced Ms. KM to come out of the bathroom, after assuring her that he would sleep in the living room.  That night, Ms. KM slept in the bedroom, away from appellant.

The following day, Ms. KM called a local crisis hotline from the apartment, explained that she had been attacked and needed to get out before appellant returned. During the call, appellant returned and Ms. KM hung up the phone.  Although initially KM appeared to be out of danger, appellant again assaulted her later that day.  Despite Ms. KM's resistance, appellant pulled down her pants and underwear, flipped her over and inserted his fingers and penis into her vagina.  As Ms. KM remained paralyzed by fear, appellant then inserted his fingers and tongue inside of her anus and touched her breasts.  Appellant then forced Ms. KM to perform fellatio on him while he was in a lawn chair.  He then turned her around and continued to sexually assault her such that she was on top of him, facing away from him, while he sat on the lawn chair.

On 5 April 2014, Ms. KM called her mother, Ms. BM, who was stateside. Although somewhat incoherent, Ms. KM managed to tell her mother that appellant had raped her.  Ms. BM arranged for another soldier, Sergeant (SGT) Inyang, to drive Ms. KM from appellant's apartment.  The next day, Ms. KM returned to her home and underwent a sexual assault forensic examination at a hospital, where a nurse observed redness and swelling in the back of Ms. KM's mouth and bruising all over her body.  Additionally, the nurse observed that Ms. KM's genitals were "very swollen, very sore, and tender to the touch."

---

[1] Pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A. 1982), appellant personally asserts a number of issues.  They merit neither discussion nor relief.

**LAW AND ANALYSIS**

*A. Ineffective Assistance of Counsel*

Appellant claims that his trial defense team was ineffective by failing to file a discovery request under Rule for Courts-Martial [R.C.M.] 701 and by failing to interview Ms. KM prior to trial. As a result, appellant maintains, his counsel were surprised when the government: 1) sought to introduce a number of the photographs depicting Ms. KM's injuries from the aforementioned assaults; 2) elicited testimony from Ms. KM that she had consulted a psychiatrist following one of the sexual encounters; and 3) elicited testimony from Ms. KM about an additional alleged sexual assault not listed on the charge sheet.

To establish ineffective assistance of counsel, "an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green,* 68 M.J. 360, 361 (C.A.A.F.2010) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in [this] order or even to address both components of the inquiry if the [appellant] makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. Here, appellant has failed to show prejudice and we therefore need not address deficient performance.

Prejudice under *Strickland* requires appellant to "show that there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 698.

*1. The Surprise of the Photographs of Ms. KM's Shorts, Underwear, and Injuries*

With respect to the photographic evidence, appellant has failed to show defense counsel's surprise was such that had trial defense counsel known about the photographs in advance of trial the results of the proceeding would have been different. In our view, as part of this burden, appellant must show that had trial defense counsel known of the photographs in advance of trial his counsel would have been either able to: 1) successfully object to the evidence; 2) undermine the evidence by some other means, not already presented at trial; or 3) adjust their overall strategy in a manner that would have changed the results of the proceeding. Appellant has proffered none of these and provided nothing to support any theory as to what would have been different.

First, our own review of the record reveals, Ms. KM established a proper foundation for the admission of the photographs. The photographs of the shorts and underwear were admitted after she established the pictures fairly and accurately represented the condition of both the shorts and underwear she was wearing on the first night appellant violated her. She readily admitted that the circles made on the underwear and the ruler in the photographs were the only exceptions to the

conditions of the underwear from the condition present on the evening she wore them.  Ms. KM also established a proper foundation for the admission of the photographs she took at SGT and Ms. Inyang's residence of the bruises she sustained as a result of appellant's crimes against her.  The location and timing of the bruises was further corroborated by SGT Inyang's identification of his own bedspread depicted in the photograph.  Had trial defense counsel learned of the photographs prior to trial, the photographs still would have been admissible.

Second, appellant's trial defense counsel asked for and received an overnight continuance upon completion of the government's direct examination to review the photos with a digital forensic examiner and to draft additional cross-examination questions.  This mitigated any surprise and allowed the trial defense counsel to develop lines of attack to undermine the value of each set of evidence.

With respect to the shorts and underwear, appellant's trial defense counsel undermined the evidence by cross-examining Ms. KM on her failure to turn the items over to law enforcement for an entire month after the crimes occurred, her release of the underwear to law enforcement only after having undergone a forensic sexual assault examination, and her sole access to the items during this month-long time frame.  Trial defense counsel asked for and received an instruction on chain of custody with respect to these items.  Trial defense counsel further incorporated this line of questioning into their overall theme that Ms. KM was a smart, manipulative individual who knows the legal system, took advantage of appellant, and made a false allegation against him.  Trial defense counsel used the month-long delay to argue the underwear was not what Ms. KM purported it to be, the government failed to produce any forensic testing of the underwear corroborating Ms. KM's claims, and further used the photograph itself to challenge Ms. KM's own description of the items and events.

With respect to the photographs of the bruises, trial defense counsel established neither SGT Inyang nor his wife noticed any bruises on Ms. KM while at their house and that Ms. KM did not have any trouble walking.  Trial defense counsel also established Ms. KM never sought to show Ms. Inyang any physical injuries, contradicting Ms. KM's express testimony.  Trial defense counsel further cross-examined the sexual assault examiner on her physical findings and established the injuries she noted were consistent with many other sources aside from a sexual assault, to include a consensual sexual encounter.  Trial defense counsel was able to incorporate these lines of questioning to argue that Ms. KM knew the legal system and created the evidence of the bruises to further her false claim.

Appellant has failed to establish that had his trial defense counsel been aware of the photographs in advance of trial, anything further could have been done to undermine this admissible evidence.  While perhaps DNA and blood testing could have affirmatively shown appellant's DNA was not on the underwear, or that Ms. KM's blood was not on the underwear in an attempt to discredit her claim of being on her menstrual cycle, this is mere speculation.  It is appellant's burden to show a

reasonable probability that the results of trial would have been different. Furthermore, any such evidence would be limited in its overall impact on the trial as Ms. KM established her clothes had been laundered and the absence of such incriminating evidence would not be exonerating. Further, trial defense counsel already argued there was no evidence of appellant's DNA on the items, no evidence of menstrual blood, and that Ms. KM tampered with or created the evidence of the assaults out of whole-cloth.

Lastly, appellant has not proffered any rationale showing how prior knowledge of these photographs would have changed any trial strategy such that it would have affected the findings. Indeed the prejudice of any potential failure to request discovery of the photographs is undercut by trial defense counsels' incorporation of the evidence into their overall theme. We also note that the quality of the evidence is limited, as the photographs appear to show nothing more than: an unremarkable pair of pinkish shorts; dirty, slightly torn underwear; and minor bruising. While the photographs corroborate Ms. KM's testimony in some respects, they undermine it in others. As such appellant has not met his burden to show a reasonable probability of a different outcome had his trial defense counsel known of the photographs in advance of trial.

### 2. *The Surprise of the Uncharged Misconduct*

Appellant has failed to show any prejudice with respect to the surprise of Ms. KM's testimony regarding uncharged misconduct. Appellant cannot show prejudice from a failure to interview Ms. KM without first establishing that Ms. KM would have agreed to an interview. Ms. KM was a civilian witness and there is no right under Article 46, UCMJ, to compel interviews. *See gen. United States v. Guardado*, 75 M.J. 889, 904-05 (Army. Ct. Crim. App. 2016) *rev'd on other grounds*, 77 M.J. 90 (C.A.A.F. 2017). Appellant has not provided any evidence that Ms. KM would have agreed to an interview or that trial defense counsel would have been able to learn of this intended testimony in advance of trial. Indeed, trial defense counsel acted appropriately, objecting to the testimony, seeking an Article 39(a), UCMJ, session outside of the presence of the panel, and requesting that the military judge give a curative instruction. Any possible prejudice that occurred was cured by the military judge's instructions to disregard the testimony.

### 3. *The Surprise of Ms. KM Seeing a Psychiatrist*

Appellant has not shown that Ms. KM would have agreed to an interview and divulged that she saw a psychiatrist in advance of trial. At trial,for after Ms. KM mentioned her psychiatrist, defense counsel immediately requested an in camera review of Ms. KM's mental health records. The military judge deemed this request to be unwarranted under Military Rule of Evidence 513. Appellant has provided no evidence to suggest that the request would have been otherwise warranted had it been made pretrial. Thus, appellant has failed to demonstrate any prejudice

whatsoever, let alone a reasonable probability the result of the proceedings would have been different.

Based on the facts of this case, we hold that appellant has failed to establish ineffective assistance of counsel.

### B. *Unreasonable Multiplication of Charges*

Appellant alleges for the first time on appeal his charges were unreasonably multiplied as he was convicted and sentenced for ten specifications, encompassing three sexual encounters that occurred over a two to three day period. Although appellant cites *United States v. Paxton*, for the proposition that claims of multiplicity and unreasonable multiplication of charges are reviewed de novo, *Paxton* involved preserved error. 64 M.J. 484, 490-91 (C.A.A.F. 2007). We address unpreserved claims of unreasonable multiplication of charges from a plain error analysis. *See United States v. Quiroz*, 55 M.J. 334, 338 (C.A.A.F. 2001) (holding Courts of Criminal Appeals are "well within [their] authority to determine the circumstances, if any, under which [they] would apply waiver or forfeiture" to issues of unreasonable multiplication of charges); *see also United States v. Chin*, 75 M.J. 220, 223 (C.A.A.F. 2016).

In order to establish plain error, appellant must show: (1) an error was committed; (2) the error was plain, or clear, or obvious; and (3) the error resulted in material prejudice to substantial rights. *United States v. Paige*, 67 M.J. 442, 449 (C.A.A.F. 2009). Appellant has failed to establish any error, let alone that such error was plain.

Pursuant to R.C.M. 307(c)(4), "[w]hat is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person." This principle is well established in military law. *Quiroz*, 55 M.J. at 336-37. Thus, even where two charges are not technically multiplicious under the elements test:

> [t]he prohibition against unreasonable multiplication of charges has long provided courts-martial and reviewing authorities with a traditional legal standard—reasonableness—to address the consequences of an abuse of prosecutorial discretion in the context of the unique aspects of the military justice system.

*Id.* at 338.

We consider five factors to determine whether charges have been unreasonably multiplied:

(1) Did the accused object at trial that there was an unreasonable multiplication of charges and/or specifications?;

(2) Is each charge and specification aimed at distinctly separate criminal acts?;

(3) Does the number of charges and specifications misrepresent or exaggerate the appellant's criminality?;

(4) Does the number of charges and specifications [unreasonably] increase the appellant's punitive exposure?; and

(5) Is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges?

*Id.* at 338 (internal quotation marks omitted) (quoting *United States v. Quiroz*, 53 M.J. 600, 607 (N.M. Ct. Crim. App. 2000)).[2]

With respect to the first *Quiroz* factor, appellant did not raise this issue at trial, and we therefore find this factor does not favor appellant.

Regarding the second *Quiroz* factor, each charge and specification was aimed at distinct criminal acts. Appellant was convicted of assaulting Ms. KM in different ways over the two-day period. While mindful of *United States v. Kremer,* ARMY 20130592, 2015 CCA LEXIS 366, at *6 (Army Ct. Crim. App. 27 Aug. 2015) (summ. disp.) *pet. denied*, 75. M.J. 117 (C.A.A.F. 2015) ("Appellant's convictions for rape and aggravated sexual assault as charged are predicated upon the same continuing criminal act."), this case is unlike *Kremer* in two ways. First, *Kremer* involved a case of preserved error. Second, and more importantly, to dismiss the specifications would be to no longer hold appellant accountable for his distinct crimes. These charges arose from crimes that occurred separately from one another and were thus aimed at separate criminal acts. Accordingly, we find this factor weighs heavily in favor of the government.

Regarding the third factor, the findings of guilty against appellant for his repeated and varied assaults against Ms. KM do not exaggerate his criminality. The panel found sufficient facts to hold appellant accountable for each act of misconduct. This factor weighs in favor of the government.

Regarding the fourth factor, appellant's punitive exposure was not *unreasonably* increased because it is not unreasonable for appellant to be held

---

[2] The bracketed alteration in the quotation reflects the holding of our superior court that "unreasonably" should be used instead of "unfairly." *Quiroz,* 55 M.J. at 339.

accountable for each distinct act of misconduct. This factor weighs in favor of the government.

Finally, because the various acts addressed separate acts of criminal conduct, there is no evidence of prosecutorial overreaching or abuse in the drafting of the charges. Thus, the fifth factor weighs in favor of the government.

We find the *Quiroz* factors weigh in favor of the government and no error was committed.

### C. Factual and Legal Sufficiency

Although appellant frames this final issue as a challenge to the factual and legal sufficiency of his convictions, he provides no argument with respect to the latter. Nevertheless, consistent with our Article 66, UCMJ, responsibilities we conducted both a factual and legal sufficiency review.

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses" we are "convinced of the accused's guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987).

Article 66(c), UCMJ, provides that this court may "weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact." When exercising this authority, this court does not give deference to the decisions of the trial court (such as a finding of guilty). *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (A court of criminal appeals gives "no deference to the decision of the trial court" except for the "admonition . . . to take into account the fact that the trial court saw and heard the witnesses.").

We note the degree to which we "recognize" or give deference to the trial court's ability to see and hear the witnesses will often depend on the degree to which the credibility of the witness is at issue. *United States v. Davis*, 75 M.J. 537, 546 (Army Ct. Crim. App. 2015), *aff'd on other grounds*, 76 M.J. 224 (C.A.A.F. 2017).

Given this "recognition," we credit Ms. KM's version of events. *See also United States v. Crews*, ARMY 20130766, 2016 CCA LEXIS 127, at *11-12 (Army Ct. Crim. App. 29 Feb. 2016) (mem. op.) ("The deference given to the trial court's ability to see and hear the witnesses and evidence—or 'recogni[tion]' as phrased in Article 66, UCMJ—reflects an appreciation that much is lost when the testimony of live witnesses is converted into the plain text of a trial transcript."). Ms. KM's testimony was supported by, among other things, the testimony of several individuals—some of whom were appellant's friends—who corroborated that Ms. KM was distraught after the numerous assaults. Ms. KM's testimony was further corroborated by the forensic examination that revealed evidence of physical injuries.

The test for legal sufficiency is "whether considering the evidence in the light most favorable to the prosecution, a reasonable fact finder could have found all the essential elements beyond a reasonable doubt." *United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (citations and internal quotation marks omitted). In weighing questions of legal sufficiency, this court is "bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted). We have carefully considered the evidence under this standard and the findings are correct in law.

The evidence here is factually and legally sufficient to support the verdict.

## CONCLUSION

The findings of guilty and the sentence are AFFIRMED.

Senior Judge CAMPANELLA and Judge WOLFE concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court